Good morning, your honors. My name is James O'Brien. I'm representing Mr. Engelhardt, the claimant seeking disability benefits in today's case. I would like to reserve about two minutes for rebuttal. Mr. Engelhardt sees this as a fundamentally simple case that's, to use an age-old metaphor, is a series of mistakes that are founded in the failure of the ALJ to recognize the severity of the injury to Mr. Engelhardt's right foot. It should be beyond question that Mr. Engelhardt's left leg, with the left leg amputated, certainly interferes with the ability to effectively ambulate. It interferes with pace. The record is replete with the sores that he has suffered on that and the number of hours per day that he has to wear the prosthetic device. Three and a half hours is the maximum. But the focus here is the ALJ made the mistake of combining the bilateral ankle fractures. You'll see that in finding of fact numbers three, four, and five. These are critical findings. And he calls that bilateral ankle fracture as though it is identical with the midfoot fracture and the shattered heel bone that Mr. Engelhardt suffers from. Because of the error in failing to recognize the inflexibility of the right foot on the plantar surface and on the turning version that is found by the prosthetic expert and the physical therapist, the ALJ never actually calculates or puts into the calculus of his findings how badly that right foot is. I refer this court to the administrative record, page 13, where in the opening statement, the representative down at the hearings level asked the ALJ to focus on the right foot, not the right ankle. Now, here's how that impacts. It impacts all the other decisions that this ALJ made concerning Mr. Engelhardt's request for disability. The ALJ's findings were faulty as it regards 105 and 102 listed impairments. Here's the reason why. There is no doubt that the inability to effectively ambulate incorporates the idea of pacing. And nowhere in any of this analysis in the decision of the commissioners does pacing enter into it, except for the implied hypothetical question that the ALJ decided not to follow. If you'll recall, one of the hypothetical questions in the record to the VE was, if you have to take breaks every 10 minutes or so, is there a vocation or job? To which the VE answered, no. And the commissioner will argue, well, the ALJ was free to ignore that vocational question, but it frankly is about the only one that approximates the impaired pacing that happens because Mr. Engelhardt has to step on his right foot onto the protrusion and has to step on flat ground because his foot can't respond to anything uneven. So with that limitation, we think that there is, and Mr. Engelhardt would argue, there's a 105 or 102 listed impairment. But that faulty reasoning by failing to recognize the midfoot limitations and the protrusion out of the heel also finds its way into an ineffective residual functional assessment because the ALJ never actually took into consideration the additional limitations by that right foot and that right heel. He was never able to make a conclusion about effective ambulation and combined impairments, which he is required to do. Thus, his RF, his residual functional analysis, is simply incomplete. It's all a dispute about what weight the ALJ gave to various parts of Mr. Engelhardt's presentation. I mean, it's not like he didn't mention it. I mean, the ALJ considered all these things, and he just wasn't persuaded by them. This is why we have trial judges. They weigh the evidence. They weigh the severity. They weigh how these impairments work together. And this wasn't a case where he just overlooked something. Well, we would disagree. By your entire client's entire story. We would disagree with that conclusion, and the reason for that is Mr. Engelhardt has separately a right ankle problem. There's swelling with it. The record is replete with that information. But because the ALJ never actually took into consideration that impairment of inflexibility of the right foot and the pain associated with stepping on that right foot, he disallowed or lessened or gave Mr. Engelhardt less than full credibility. And it's Mr. Engelhardt's position that if the ALJ misses some impairments that cause chronic pain, that limit ambulation, further limit ambulation, those conclusions about his ability or his abilities are faulty. We also think besides that credibility, that determination, which is based on this house of cards, that we're not going to acknowledge this particular right foot impairment, aside from the credibility, it led to an inappropriate reliance on the hypothetical that was given to the VE. And so if the VE doesn't have all of the impairments when the hypothetical is postulated, the VE cannot be relied upon to have given a reliable answer. And for those reasons, Your Honors, we would ask you to reverse the ALJ's finding, find that there is listed impairments on a 105 or 102 basis because of the pacing that must be impacted by both the left leg impairment and the right foot impairment. Thank you. Thank you. Your Honor, my name is Kirsten Westerlin. I represent the Acting Commissioner of Social Security, Carolyn Colvin. May it please the Court, the Commissioner acknowledges that Mr. Engelhardt suffered severe injuries at the age of 26 in his August 2007 accident and had a number of functional limitations as a result. However, by May 2008, Mr. Engelhardt had received a permanent prosthetic leg, and thereafter there are only a handful of medical records regarding his physical impairments, and they establish mild issues at best. Similarly, while Mr. Engelhardt did suffer PTSD and depression as a result of his accident, the record establishes only mild to moderate issues. By the administrative hearing, Mr. Engelhardt testified to being in college, taking four different classes at a local community campus that he drove to. He stated earlier in that year that he was the primary stay-at-home parent, and he testified to helping out around the house and doing family activities, taking vacations, living a normal life. Perhaps most important to this appeal, the ALJ incorporated the majority of the tangible limitations that Mr. Engelhardt testified to at the administrative hearing, and despite incorporating all of these limitations into the residual functional capacity, a vocational expert was able to identify a substantial number of jobs that Mr. Engelhardt was still capable of doing. This Court has held that if the evidence in an administrative record can support either affirming or reversing the ALJ's conclusion, the ALJ's conclusion must be upheld. Here, there is evidence to support affirmance. Regarding the record, the Commissioner acknowledges that from August 2007 when the accident occurred to May 2008, Mr. Engelhardt had a serious period of recovery. He had surgeries. He had hurt himself very badly in the accident. But after that, there's minimal records regarding his physical impairments. In May 2008, he reported to his prosthetist that he was very pleased with his permanent prosthetic leg. His physical therapist discharged him in May 2008, stating, quote, that Mr. Engelhardt could walk fairly comfortably with his prosthesis and no walking aids. In August 2008, Mr. Engelhardt reported to his prosthetist that he was doing really well, that his speed was increasing, and that he still sometimes relied on a cane and was having some discomfort. A year later, in October 2009, he reported one instance of a sore to his prosthetist who suggested he not wear his prosthetic leg for a short period of time. And then a year after that, in September and October 2010, Mr. Engelhardt received care for his chronic pain issues by a nurse practitioner, Arnold. This is not enough to establish total and permanent disability. Regarding his psychological impairments, Mr. Engelhardt did see a psychologist, Dr. Cecil, for a period of time immediately after his injury and during his time of recovery, from October 2007 until March 2008. And while Dr. Cecil stated that his prognosis was guarded, he said that part of this prognosis was because of current stressors, a lack of income at that time, a lack of employment at that time, and the fact that some of his pain medication was impacting his depression. Mr. Engelhardt also saw a therapist, Ms. Baumann, after he was released from prison. This was part of his probation, and he actually was very frustrated at having to participate in this therapy, stating that he didn't think he had any mental health issues. Testing from Ms. Baumann to testing, which established mild to moderate impairments at best. Ms. Baumann reported Mr. Engelhardt being cooperative during his counseling. While Ms. Baumann did ultimately list a number of symptoms that Mr. Engelhardt suffered from, she didn't ever specify any functional impairments or functional limitations as a result of these symptoms. And the evidence supports that Mr. Engelhardt was capable of a lot of activity. He was going to college full-time. He was caring for his young children, age four and six. He went on a two-week vacation to California. He went to a county fair. He did the dishes. He helped around the house. He did the laundry. State agency psychologists and a medical expert who testified at the administrative hearing similarly found that Mr. Engelhardt had mild limitations regarding his mental limitations at best. As stated, the residual functional capacity incorporated essentially all of the limitations Mr. Counsel has not brought up other limitations that would be required based on the evidence of record. And despite including all of these limitations in the residual functional capacity, a vocational expert was able to testify that there were a number of jobs that Mr. Engelhardt was still able to do. Regarding- Could you point out what aspects of Mr. Engelhardt's testimony were specifically found not credible? You know, the ALJ didn't specify what specific parts of his testimony he didn't find credible, but he didn't have an obligation to do so. The standard under the Bunnell case is that he has to provide specific reasons for finding Mr. Engelhardt not fully credible and that there's enough information for a reviewing court to kind of be able to determine the logic that the ALJ took. But I think most importantly, the ALJ incorporated the majority of limitations Mr. Engelhardt testified to, and Counsel doesn't point to other limitations that the ALJ specifically excluded from the RFC. Okay, thank you. Thank you. Do you have a little time for a bubble? To answer Your Honor's last question, I think finding a fact five at the excerpts of the administrative record, page 20, is critical in terms of evaluating the residual functional assessment that the ALJ performed. And noticeably there is, other than a quote-unquote avoiding concentrated exposure to- avoiding walking across uneven or rough surfaces, that's the only reference that we have that might possibly incorporate the right heel injury. And in the briefing, the commissioner had opined that that was a sufficient description. And even if it were conceded that that's a sufficient description of essentially a locked foot, and if you just imagine walking on the foot how we normally walk on our feet, and then having none of that normal mobility that's associated with it, it would be Mr. Engelhardt's position that finding a fact is lacking. And because that's an inadequate description of the residual functional capacity of Mr. Engelhardt, it's simply not supported in the record. Mr. Engelhardt would also point out, and this is sort of the problem that is the other source problem, the commissioner maintains there's really very little information, especially more recently, in the record that would support disability. But that's the problem with the other source rationale. For example, the physical therapist observed this immobile right foot that we have that's creating an additional level of pain that is not recognized by the ALJ, and that's never been rebutted. It's never been explained why that isn't an appropriate finding. Its particular observation is also demonstrating that in the early records of medical care, there is no spurring. Well, that's because it took time for that eruption and that protrusion to take place. And so when the commissioner opines there's fewer medical records, in the record the court will find that Mr. Engelhardt has no money and has specifically told the ALJ that one of the reasons why there is a gap in medical care is because he didn't have the money to afford to do that. And so the lack of medical records shouldn't go against Mr. Engelhardt when we have the obvious unrebutted evidence that that right foot is almost as severely impaired as the left leg. And so for that reason, we'd ask for disability benefits. Thank you. Thank you, Your Honors. The case is argued and submitted. The last case on the argument calendar, Williams v. Knuth.
judges: Kozinski, Fernandez, Fisher